IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

**CLOSED CIVIL CASE**

CASE NO.: 04-10097-CIV-KING

ISLAND SILVER & SPICE, INC.
and GLENN S. SAIGER and
VIRGINIA SAIGER, husband and
wife,

       Plaintiffs,

v.

ISLAMORADA, VILLAGE OF ISLANDS,
a Florida municipality, DON HORTON, as
Islamorada Building Official and ED
KOCONIS, as Islamorada Planning &
Development Services Director,

       Defendants.

_____/

## MEMORANDUM OPINION, DECLARATORY DECREE AND FINAL JUDGMENT

The Plaintiffs own and operate Island Silver & Spice, a retail store, in the Village

of Islamorada in the Florida Keys. They seek injunctive and other relief contending that

The Village's interpretation of its Formula Retail Regulations, as set forth in the Village

Code § 30-1264, has denied them a constitutionally protected right to sell this property.[1]

---

[1] This opinion addresses the formula retail regulations of Village Ordinance 02-02: § 1.6.4.4 and § 1.6.4.1(e). Plaintiffs only challenge the constitutionality of the formula retail regulations and the Court only makes findings of fact based on the formula retail regulations. All other sections of Ordinance 02-02, such as the regulation of drive-in and drive through facilities (§ 6.4.2) and the prohibition of formula restaurants (§ 6.4.3), are outside the scope of this opinion.

The Complaint alleges as follows: Count I is a 42 U.S.C. § 1983 action for violations of Equal Protection, the Privileges or Immunities Clause of the Fourteenth Amendment, as well as discrimination under the Commerce Clause and Invalid Zoning. Count II is an action for Declaratory Relief arising from alleged violations of Equal Protection and Due Process secured by the United States and Florida Constitutions. Count III is an action for Declaratory Judgment arising from alleged violations of Equal Protection. Count IV seeks a Writ of Mandamus for violations of Equal Protection secured by the United States and Florida Constitutions. Finally, Count V seeks injunctive relief for violations of Due Process, Interstate Commerce, Commercial Speech and the Dormant Commerce Clause.

The Answer denies any violations of constitutional, statutory or case law by the Village flowing from enactment of the Formula Retail Ordinance and contend that Plaintiffs' five causes of action are without merit.[2]

Constitutional claims within this court's original jurisdiction arise under 42 U.S.C. § 1983, and Plaintiffs' claims under Florida law are within the Court's supplemental jurisdiction because they arise out of a common nucleus of operative facts as the federal claims.

---

[2] Pretrial Stipulation, March 17, 2006, D.E. #52-2.

2

## I. PROCEDURAL BACKGROUND

The parties have stipulated that there are no disputed issues of material fact. Although given the opportunity to proceed after denial of the Defendant's Motion for Summary Judgment on May 3, 2006,[3] at a jury trial on May 22, 2006,[4] and non-jury trial on August 28, 2006; the parties elected to waive the presentation of any life testimony at a trial.

This subsequent non-jury trial was continued upon the filing of a joint motion by the parties to waive any submission of oral testimony for the reason "the parties agree that there are no disputed issues of material fact present that require resolution at trial," and "The only matters remaining to be decided are matters of law which are properly determined by the Court and do not necessitate a trial".[5]

This matter now comes before the Court for decision upon the Evidentiary Stipulation, documentary evidence and pleadings of the record in deciding the purely legal issues.[6]

Fed. R. Civ. P. 50(a)(1) is therefore the standard of review for the Court's

---

[3] D.E. #67-2.

[4] Voir dire of a panel of Keys residents summoned for jury duty at the United States Courthouse in Key West, Florida on May 22, 2006 fell short of the number needed to select a fair and impartial jury who had not learned of the case through prior media coverage and/or had formed opinions on the merits. After the entry of an agreed mistrial, the parties stipulated to waiving jury and proceeding to non-jury trial on August 28, 2006.

[5] D.E. #78-2.

[6] D.E. #77-2.

3

consideration and decision.[7]

Those stipulated facts[8] material to the resolution of the constitutional issues presented herein are adopted by the Court and found as fact as follows:

## II.   **FINDINGS OF FACT**

Plaintiffs are the owners of the real property located on US Highway 1 in the Village of Islamorada and of the business conducted thereon, known as Island Silver & Spice. The property is zoned Highway Commercial use pursuant to Village's land development code and is located within the Village's geographical limits in the Florida Keys. This present zoning allows the use of the property as a retail department store and other retail uses including a pharmacy.

Island Silver & Spice has been operated by Plaintiffs for a number of years as a retail store, located on US Highway 1 in the Village. The store is a street level business comprising over twelve thousand square feet of floor area. Plaintiffs describe their business as a tropical department store, selling goods such as stationery, gifts, clothing, jewelry, shoes, cookware, housewares, furniture, and seasonal items. Plaintiffs purchase those goods for resale from in-state vendors as well as out-of-state vendors. Plaintiffs

---

[7] (a) Judgment as a Matter of Law.

   (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim of defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

[8] Evid. Stip., *supra.*

4

have not operated a pharmacy as part of, or adjunct to, their store in the past.

On June 28, 2002, Plaintiffs entered into a contract to sell the property for $2,650,000 to Whiteco Interra Ventures, LLC. Whiteco desired to purchase the property to establish a Walgreen Drug Store on the property, in the same footprint as Plaintiffs' existing retail store. Whiteco's obligation to close under the contract with Plaintiffs was conditioned on approval by the Defendant Village of Islamorada of the use of the property as a Walgreen Store. The Walgreen Drug Store chain engages in interstate commerce, operating over 5,000 stores in 45 states, served by 14 regional distribution centers.

The Walgreen Stores contain a licensed pharmacy, but also sells a wide variety of non-prescription goods. Walgreen describes its typical store as 14,500 square feet with a sales area of 11,000 square feet, offering 25,000 items for sale. Walgreens.com non-prescription store orders are shipped by affiliated couriers to the contiguous 48 states.

After the contract to purchase the Plaintiff's department store was signed, Whiteco applied to the Village for the permits required to convert the property to the proposed use as a pharmacy. Such a proposed use of the property is subject to Village Ordinance 02-02 (Village Code § 30-1264, the "Formula Retail Ordinance," or the "Ordinance").

On July 21, 2003, Village Director of Planning and Development Services Ed Koconis issued a determination that the proposed use was a formula retail use under the Ordinance, and accordingly would be subject to the requirements and restrictions of the Ordinance.

The Ordinance defines "Formula Retail" as:

5

> A type of retail sales activity of retail sales establishment (other than a "formula restaurant") that is required by contractual or other arrangement to maintain any of the following: standardized array of services or merchandise, trademark, logo, service mark, symbol, decor, architecture, layout, uniform, or similar standardized feature. This shall not include establishments providing professional services, such as real estate offices, banks or saving and loan establishments, income tax preparation or accounting offices, or the like.

§ 30-1264, *Formula Retail Regulations*, Islamorada *Code*, provides that a formula retail establishment shall be approved only as a major conditional use and must meet the following criteria: (1) Shall not have a street level business frontage of greater than 50 linear feet; and (2) Shall not exceed 2,000 square feet of floor area. Ordinance 02-02, § 1.6.4.4, (2002). These dimensional limitations apply only to formula retail establishments.

The proposed Walgreen Store is a Formula Retail Establishment, as defined by the Ordinance, and the Island Silver & Spice building greatly exceeds the dimensional limitations; therefore, Whiteco's proposed use was not allowable under the Ordinance unless the professional services exemption were found to be applicable. The Ordinance contains no waiver or variance provision.

On August 18, 2003 Whiteco appealed Director Koconis' administrative determination, arguing, that as a pharmacy the proposed Walgreen Store fell within the exception for "establishments providing professional services". At a public hearing on that appeal, the Village Council voted to grant Whiteco's appeal, finding the

6

"professional services" exception applicable.[9]

However, on April 22, 2004, the Village Council reheard the appeal and reversed its prior decision, denying the appeal. The Village then amended the Ordinance, codifying exclusion of drug stores and other retail establishments from the "professional services" exception.[10] No further appeal was taken from the Village Council's appellate decision. It is undisputed that the proposed Walgreen's Drug Store is a Formula Retail establishment as defined in the Ordinance, because it has all of the standardized features listed in the Ordinance as formula retail indicia.

Whiteco exercised its option to withdraw from the purchase of Plaintiffs' property after the requested land use permits for the Walgreen drug store were denied by Defendant Village. Plaintiffs lost the sale of the property and the proceeds to which they would have been entitled under the contract with Whiteco. Plaintiffs Glenn and Virginia Saiger, are unable, due to age and physical conditions, to continue operating the Island Silver & Spice department store. They have marketed the property, but have been unable to find a buyer, other than formula retail operators, ready willing and able to purchase the property for its market value.

---

[9] Tr. of Village Council Meeting, Nov. 13, 2003, Ex. 15 (App. A).

[10] As amended, the Ordinance now clearly excludes drug stores and other retail stores: "The Professional Service Exemption, § 30-1265 provides that a professional service use shall be exempt from the provisions of this division, however, the professional service exemption provided in this subsection shall not apply to: (1) any professional service use which provides retail sales, in whole or in part, and meets the definition of either formula retail or formula restaurant; or (2) the professional service use is accessed from within either a formula retail or formula restaurant. Ordinance 04-08, § 2 (2004) § 30-1266-30-1290."

During the time that Whiteco has unsuccessfully sought to obtain Village land use permits for the Walgreen Store, the only pharmacy located within the Village is the Eckerd formula retail drug store located at 82894 Overseas Highway, Islamorada. That store was operated as a branch of the Eckerd Corporation pharmacy chain until some time after June 17, 2004, and was in existence prior to the Village's incorporation on December 31, 1997. Upon enactment of the Ordinance, Eckerd drug store became a nonconforming use, and its formula retail signs and other indicia became nonconforming, under the Village's interpretation of its Code.

Subsequently, CVS Pharmacy, Inc. acquired the assets of Eckerd, and some time after June 17, 2004, converted the Eckerd store to a CVS store. In doing so, CVS removed all Eckerd brand indicia and signage from that property, and replaced it with CVS brands and signage. Among the changes made in the process of that conversion from Eckerd to CVS, the freestanding Eckerd sign at the front (U.S. Highway 1 frontage) of that property was replaced with a CVS sign, and minor interior renovations were also made. In all other respects, the property remained the same, and the non-conforming formula retail use continued. Under the Village Code, the Eckerd store was a nonconforming use, and the Eckerd sign was a nonconforming structure, because of noncompliance with the Ordinance. The Village Code contains provisions that govern continuance of nonconforming uses and structures.

On June 17, 2004, Plaintiffs sent a letter to the Village stating that the Formula Retail Ordinance contained no provision which would allow or provide for the sale of the

assets of an existing "formula retail" business to another "formula retail" business, without the transferee complying with the requirements and restrictions of Ordinance 02-02, and that the Ordinance therefore prohibited the creation of the CVS formula retail store.

Under the Village Code and Charter, Director of Planning and Development Services Ed Koconis has the ultimate authority to interpret and apply the Village's land development regulations, and to advise the Village Council with respect to the Goals, Objectives and Policies of the Comprehensive Plan, and the Guiding Principles established in Chapter 380, *Florida Statutes*. In applying the Formula Retail Ordinance to the transition of Eckerd to CVS, Director Koconis determined that the transition was a continuation of the previous nonconforming use, and therefore allowable under the Village's nonconforming use ordinance, Ordinance 02-11, § 1.5.2.5 (2002). Under the Village Code, a non-conforming use may continue as a non-conforming use, even if the brand changes, as long as the structure does not change. CVS was therefore allowed to continue Eckerd's non- conforming use, as the new CVS was substantially the same as the old Eckerd, but for a change in signage and some interior remodeling. Accordingly, the Village allowed CVS to conduct its drug store business in the former Eckerd's store as a continuing nonconforming use, to change the store's signs and to make some interior renovations. The Village subsequently issued a permit to CVS to allow the construction and placement of a freestanding CVS sign at the front of 82894 Overseas Highway, replacing the former Eckerd's sign.

9

The Eckerd drug store was, and the CVS drug store is, a "formula retail" establishment as described by § 6.4.1(e) of the Ordinance. The drug store operated by CVS is substantially the same type of retail drug store business as the retail drug store business conducted on the site by Eckerd, although all of Eckerd's formula retail indicia (signage, uniforms, generic brand names, etc.) have been replaced by CVS formula retail indicia. Prior to the conversation of the Eckerd drug store to a CVS drug store, a CVS drug store there did not exist in the Village of Islamorada.

The Defendant, Edward Koconis, Deputy Village Manager and Director of Planning and Development Services testified that the only reason he was aware of, for the adoption of the Formula Retail Ordinance by the Defendant Village of Islamorada, was to keep the small town atmosphere:

> "Q.    I'm asking you to confine your question to the Village and its ordinance.
>
> ***
>
> A.    I believe I heard comments on the Village keeping its small town atmosphere and everything else from that.
>     MR. JABRO: Did you say small town atmosphere?
>     THE WITNESS:    Yes.
> Q.    Let's talk about the small town atmosphere. That appears to be – first of all, let me ask you, is there anything else other than the small town atmosphere that would be responsive to the question I asked?
> A.    There may be, but it's not coming to me at this moment.
> Q.    Does the Village have and did it have at the time of the adoption of the Formula Retail Ordinance a number of nationally branded formula retail establishments?
> A.    A number would be one or more, so I would have to say yes."[11]

_____

[11] Pls.' Ex. 13 at 24-26.

Village council member Mike Forster told Plaintiff Glenn Saiger that the Village adopted the Ordinance because of antipathy to a disfavored national retail chain.[12]

> "Q.     Have you come to learn from your discussions with council members or anyone else in Islamorada, other than your attorneys, that the purpose behind the formula retail ordinance was to continue the unique characteristics of Islamorada?
> A.     No.
> Q.     Have you ever come to learn that the purpose behind the formula retail ordinance was to continue the individual ownership of businesses rather than allow megachains to come in?
> A.     No.
> Q.     All right.
> A.     I omitted something.  Mike Forster told me the only reason for the formula retail ordinance was to keep McDonald's out of the location they wanted to go in."

Vice-Mayor Mark Gregg summarized the Village Council's legislative intent as

follows:

> "And I remember – you know, you want to talk about legislative intent, what did we have in mind.  We didn't want none of them darn chain stores coming to town.  That's what it was all about, in plain words.  My words anyway.  So the thought was how do we stop that.  We wanted to do something to prevent that.  And we wrote it the way we thought and we tried to provide for some exceptions.  We tried to make the law fair.  And we put a provision in there that spoke about professional services.  And I think we were referring to like chain real estate companies, you know, Century, whatever, you know, ReMax or whatever.  And there are, for example, law firms that have multiple offices around the state or country.  There are other professions and other businesses like that.  And I think that we were trying to carve out the exception for that."[13]

---

[12] Pls.' Ex. 14 at 83.

[13] Statement of Village Council member Mark Gregg during the Whiteco-Interra (Walgreens) appeal hearing (Pls.' Ex. 16, Tr. of Village Council Meeting at 76; originally filed as App. A to Pls.' Resp. to Mot. for Summ. J.).

Two members of the five-member Village Council that adopted the Ordinance

owned businesses in the Village (one, a local restaurant; the other, a local grocery store,

"The Trading Post") within the categories protected from chain competition by the

Ordinance. In adopting the Formula Retail Ordinance, the Village stated that it intended

to maintain a village-like atmosphere, or as Director Koconis describes it, "the Village

keeping its small-town atmosphere."[14] However, no Goal, Objective or Policy of the

Village's Comprehensive Plan mandates, or is implemented by, the Ordinance.[15] The

Village has no Historic District, and there are no historic buildings in the vicinity of

Plaintiffs' property.[16] The Ordinance is not necessary for preservation of the historic

---

[14] Pls.' Ex. 13, Koconis deposition at pp. 25-26. Islamorada has a number of "formula retail" businesses, including gas stations, a national-chain drug store, and other formula retail businesses, which were in existence prior to passage of the Formula Retail Ordinance. Id., pp. 26-28. Photographs of numerous "formula retail" stores were introduced into evidence by Plaintiffs, and demonstrate that U.S. Highway 1 (the Village's "mainstreet") accommodates many of the same chain stores (e.g., CVS, Burger King, Outback Steakhouse, Ace Hardware, Tom Thumb, True Value Hardware) that one might see on major thoroughfares anywhere in America.

[15] Id. at 20. Nor did the Council receive and consider evidence in the adoptive process: No supportive data were presented, and the Village neither conducted nor relied upon studies to establish a need for, or the probable effect of, the Ordinance. Id. at 16-17.

[16] Evid. Stip., supra. The only structure on the island of Islamorada that has any historic significance is the Florida Keys Hurricane Monument dedicated November 14, 1937. The monument honors the memory of the WWI Veterans, and people living on the island, who perished in the most powerful storm to ever strike the United States. Over 500 people were killed when the Labor Day Hurricane smashed ashore destroying everything in its path. Devastating winds of over 200 mph, a storm surge tide of 18 feet swept across Islamorada, splintering and washing away all structures, tumbling railway cars off the railroad tracks leaving few survivors.

The monument is a crypt, built of Florida Keys coral limestone 65 feet long by 20 feet wide, and bears a plaque reading "Dedicated to the memory of the civilians and war veterans whose lives were lose in the hurricane of September 2, 1935." See Drye, Willie. Storm of the Century: the Labor Day Hurricane of 1935; Brett M. Colbert, The Last Bridge.

characteristics of any buildings in the Village.[17]

The Formula Retail Ordinance effectively prevents the establishment of new formula retail stores within the geographical limits of the Village. A facility limited to no more than 2,000 square feet or 50' of frontage can not accommodate the minimum requirements of nationally and regionally branded formula retail stores. A facility subject to those limitations is unmarketable to formula retail operators. The Ordinance, as applied, has kept prospective formula retail operators, including Publix and Walgreens, from operating retail stores in the Village.

The Village of Islamorada is within the boundaries of the State-created Florida Keys Area of Critical State Concern ("ACSC"). Chapters 163 and 380, *Florida Statutes*, govern local land use policies, land development regulations, and development orders in the ACSC.

Fla. Stat. § 380.05 requires that local comprehensive plans and land development regulations ("LDRs") comply with the State's "Guiding Principles" for the ACSC. Fla. Stat. § 163.3201 requires that the Village's LDRs "shall be based on, be related to, and be a means of implementation for" the Comprehensive Plan. The Village has land development regulations, other than the Ordinance, that govern and control traffic generation of retail uses. The Village utilizes those other regulations and its conditional use process to control traffic generation and congestion on US 1. Similarly, the Village

---

[17] *Id*, at 38.

has and utilizes land development regulations that limit the dimensions, location, and use of buildings and signs.

A judgment rate of interest is annually established by the State of Florida. Florida's Chief Financial Officer is required under Florida law to set the rate of interest that shall be payable on judgments beginning January 1st of each year.  That interest rate established for calendar years 2004 and 2005 was set at 7% per annum, and for 2006, at 9% per annum.  Fla. Stat. § 55.03(1).[18]

## III.   DISCUSSION OF LEGAL ISSUES AND CONCLUSIONS OF LAW

### A.   The Dormant Commerce Clause Is Violated by the Formula Retail Provisions of the Village Ordinance

#### 1.   Standard of Review

In *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 392 (1994) the Court held "[t]he Commerce Clause presumes a national market free from local legislation that discriminates in favor of local interests."  Further, the Supreme Court proclaimed in *Hughes v. Okla.*:

> The few simple words of the Commerce Clause–"[t]he Congress shall have Power... [t]o regulate Commerce... among the several States..." reflected a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation.  The Commerce clause has accordingly been interpreted by this

---

[18] Evid. Stip., *supra*.  On January 1, 2007, the rate was changed.  Fla. Stat. § 55.03(1) provides the interest rate for 2007 at 11% per annum.

Court not only as an authorization for congressional action, but also, even in the absence of a conflicting federal statute, as a restriction on permissible state regulation.

*Hughes v. Okla.*, 441 U.S. 322, 325-26 (1979) (citations omitted). Therefore, courts must review state and local economic regulations to ensure state legislation does not discriminate in favor of local interests.

When local economic regulation is challenged under the Dormant Commerce Clause, the court shall subject it to one of two tests, depending on whether the regulation discriminates against interstate commerce or merely affects it incidentally. Regulations involving interstate commerce that are discriminatory in nature are subject to elevated scrutiny, whereas regulations involving interstate commerce that are not discriminatory are subject to the more permissive *Pike* balancing test. The ultimate object of both tests is to determine whether the regulation involves economic protectionism, but there is no bright line separating the two categories. *See e.g. Bainbridge v. Turner,* 311 F. 3d 1104 (11th Cir. 2002); *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986). A statute that fails the appropriate commerce clause test shall be struck down by the Court.

The first test, the elevated scrutiny test, applies when the statute is discriminatory in nature, either on its face or in practical effect. Under this test, the plaintiff bears the initial burden to prove that the regulation affects in-state and out-of-state economic interests disproportionately. *See id* at 578-79 ("When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic

15

interests over out-of-state interests, [the Court has] generally struck down the statute without further inquiry."); *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 274 (1988) ("Thus, state statutes that clearly discriminate against interstate commerce are routinely struck down unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.").

The state must then justify the discrimination by showing (1) that the statute has a legitimate local purpose; (2) the statute serves this legitimate interest; and (3) adequate nondiscriminatory alternatives are not available. *See Hughes,* 441 U.S. 322; *Hunt v. Wash. State Apple Adver. Comm'n.*, 432 U.S. 333 (1977); *Gov't Suppliers Consol. Serv., Inc. v. Bayh*, 753 F. Supp. 739 (S.D. Ind. 1990). Thus, under the "elevated scrutiny test," such state regulation is "virtually *per se* invalid." *See Gov't Suppliers,* 753 F. Supp. at 763; *Brown-Forman Distillers Corp.,* 476 U.S. 579.

The Court uses a second test, the *Pike* balancing test, for statues that do not have a discriminatory effect on interstate commerce. This test is more permissive, but a statute that imposes burdens on commerce that clearly outweigh the local benefits will fail. *See id.* at 579 ("When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits."). The Supreme Court laid out this balancing test in *Pike v. Bruce Church*:

> If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well

16

> with a lesser impact on interstate activities. Occasionally the Court has candidly undertaken a balancing approach in resolving these issues, but more frequently it has spoken in terms of 'direct' and 'indirect' burdens.

397 U.S. 137, 142 (1970).

### B.     The Village Ordinance Fails Under Either Standard

Because there is "no clear line separating" discriminatory and non discriminatory statutes, in the instant case, the Court will subject the ordinance to both the elevated scrutiny test and the *Pike* balancing test. *Brown-Forman Distillers,* 476 U.S. at 579.  The instant ordinance fails both tests: it is discriminatory in impact against interstate commerce without an adequate legislative purpose, and the burden it imposes is clearly excessive in relation to its putative local benefits.

### 1.     The Elevated Scrutiny Test

As discussed *supra*, the instant ordinance subjects "a formula retail establishment...to the following criteria: (a) [it] shall not have a street level business of greater than fifty (50) linear feet on any street; and (b) [it] shall not exceed two thousand (2,000) square feet."  Ordinance 02-02 § 1.6.4.4 (2002).  A formula retail establishment is defined as:

> a type of retail sales activity of retail sales establishment (other than a "formula restaurant") that is required by contractual or other arrangement to maintain any of the following: standardized array of services or merchandise, trademark, logo, service, mark, symbol, decor, architecture, layout, uniform, or similar standardized feature.  This shall not include establishments providing professional services, such as real estate offices, banks or saving and loan establishments, income tax preparation or accounting offices, or the like.  This shall also not include a cooperative buying group unless the establishment maintains the standardized features

17

described above.

*Id.* at § 1.6.4.1(e) (emphasis removed).

According to the ordinance, a "retail sales establishment" without any of the above

referenced standardized features can be any size, whereas a "retail sales establishment"

*with* any of the above-referenced standardized features is restrained to "a street level

business" of not greater "than fifty linear feet on any street" and cannot exceed "two-

thousand (2,000) square feet." Nonetheless, the ordinance is facially neutral. All stores

with standardized features are treated the same. Regardless of whether the retail stores

are local or national, if they have standardized features they are restricted in size.

However, a facially neutral statute can still be discriminatory if its impact

disproportionately affects out-of-state commerce. For instance, in *Atlantic Prince, Ltd v.*

*Jorling*, the court invalidated a facially neutral New York statute because of its

discriminatory "practical effect." 710 F. Supp. 893, 896 (E.D.N.Y. 1989). The statute

prohibited commercial fishing of certain fish in vessels over 90 feet long. However, at

the time the regulation was enacted, it almost exclusively burdened out of state fishers,

who used over 90 foot vessels ten times as frequently as New York fishers. *Id.* at 897.

The court found that, in light of the disproportionate burden, the facial neutrality of the

statute was irrelevant. The standard the Court must apply is the same whether the statute

discriminates facially or in effect.

The Court finds that the practical effect of the instant ordinance discriminates

between local and national business. Even though on its face the statute allows formula

18

retail stores, in actuality, the ordinance eliminates national retail chain stores because they cannot operate within the strict size constraints imposed by the ordinance. The ordinance has kept prospective national retail stores from operating in the Village of Islamorada, including Walgreens and Publix. Such national retail stores cannot operate in a 2000 square foot store with only fifty feet of frontage. (Evid. Stip. at 7.) On the other hand, the ordinance does not constrain local businesses. A local business that does not use standardized features can be as large as its proprietors want it to be. A local retail pharmacy may sell the same products as a Walgreens Drug Store in a 14,000 square foot store, as long as it does not use any standardized features. The practical effect of the ordinance favors local interests at the expense of national chains. It is irrelevant that a local chain store could potentially be restricted in the same way as a national chain.[19]

Because the practical effect of the statute is discriminatory, it is subject to the elevated scrutiny test. The burden therefore switches to the Village to justify the discriminatory nature of the ordinance by showing (1) that the statute has a legitimate local purpose; (2) the statute serves this interest; and (3) adequate, nondiscriminatory alternatives are not available. To prevail, the Village must meet all three prongs of this test; however, the Village does not meet this burden.

The first prong of the test asks whether the goal of the ordinance is legitimate. The Village justifies the ordinance as a means to "remain a small town community,

---

[19] The Village has not given the Court any examples of local chain stores that use standardized features falling under the Ordinance.

remain unique through a development pattern which reflects the predominance of natural conditions and characteristics over human intrusions, and avoid 'auto-urban' development influences." Ordinance 02-02 at 1. Specifically, the Village contends that "one of the threats to the Village's uniqueness and natural relaxed atmosphere is the potential proliferation of 'formula' restaurants and retail establishments," because "such types of establishments diminish the unique character of the Village by offering standardization of architecture, interior design and decor, uniforms and the like." Ordinance 02-02 at 2. This stated goal is not a legitimate local interest.

In general, preserving a small town community is a legitimate purpose; however, in this instance, the Village has not demonstrated that it has any small town character to preserve. The Village of Islamorada is not uniquely relaxed or natural, nor is there a pre-dominance of natural conditions and characteristics over human intrusions. The Village is currently bisected by Highway One; a busy thoroughfare fronted by a large number of retail establishments, including well known chain stores such as CVS Pharmacy and Ace Hardware. (Pls.' Ex. 12.) Thus, any unique character or natural relaxed atmosphere of the Village has already been diminished.

Instead, the ordinance appears tailored to serve local business interests by preventing competition from national chains. A member of the Village Council admitted that the ordinance was inspired by the Council's desire for "none of them darn chain stores" to come to town. (Pls.' Ex. 15, Tr. of Village Council Meeting at 76). Thus, the purpose of the ordinance is economic protectionism, not the legitimate goal of preserving

a small town community.

Assuming arguendo, that the Village has a small town character to preserve, the ordinance also fails the second prong: the ordinance does not serve this interest. The Village has not established that the ordinance preserves small town character; defined by the Village as "small scale uses, water-oriented activities, a nationally significant natural environment, quiet shorelines, and passive relaxation opportunities." Ordinance 02-02 at 1. First, the Village does not address small formula retail stores, which are permitted under the ordinance, but would presumably affect the Village's small town character as well. Secondly, the ordinance allows for existing non-conforming uses to continue and even change hands, which would presumably also affect the Village's character. Ordinance Division 3 § 30-735(5). Under this non-conforming use exception, at the same time that the Walgreens' size was restricted under the ordinance, ostensibly to preserve the community's small town character, a standardized CVS pharmacy was approved for a site larger than the size restrictions of the ordinance. (Evid. Stip. at 5-6.) The Village does not explain why the new, large, standardized CVS does not interfere with the town's unique small town character, but a new Walgreens would. Third, though the ordinance purports to be part of a "Comprehensive Plan" preserving the Village's relaxing, natural, and quiet community, other types of large, artificial, or noisy buildings, besides chain stores and restaurants, can still interfere with the Village atmosphere as much as they like. Ordinance 02-02 at 1. The Village does not explain why the ordinance singles out retail stores and restaurants with standardized features as the kind of buildings that

21

interfere with a small town community. Restricting formula retail stores, while allowing other large, non-unique structures, does not preserve a small town character.

Because the ordinance clearly fails the first two prongs of the test, the Court does not need to reach the merits of the third prong of the test. Whether the Village can show that no adequate, non-discriminatory methods were available is therefore immaterial.

### 2. The *Pike* Balancing Test

Even non discriminatory statutes are overturned if the burden they impose on commerce is clearly excessive in relation to the putative local benefits. While subject to a more permissive standard, non-discriminatory statutes with incidental effects on interstate commerce must still pass a test for economic protectionism. In the instant case, the burden on commerce is clearly excessive in relation to the benefits. Thus, the instant ordinance also cannot pass the *Pike* balancing test.[20]

In the instant case, commerce has been greatly curtailed. Plaintiffs want to sell to a national chain, a business that does commerce across state lines, because they cannot find a non retail chain willing to pay market price. (Evid. Stip. at 4.) However, the Village has prevented them from doing so, and has placed many burdens on the commerce of Islamorada in the process. The Plaintiffs, now unable to sell their property except at a reduced price, are harmed; the willing purchasers, unable to expand their business into Islamorada, are harmed; and finally, the residents of Islamorada, who lose

---

[20] As a discriminatory ordinance, the ordinance is also subject to the stricter standard.

22

the advantages of having unhampered national competition for their business, are also harmed.

On the other hand, the benefits to the Village are vanishingly small. Besides the illegitimate advantages of economic protectionism for local business interests, the only putative local benefit is an attempt to establish a small town community. A small town in the middle of a tourism center, could conceivably enjoy significant benefits from creating and preserving a quaint island village atmosphere. Such a town might enjoy increased tourism from people who desire to experience the character of a small island village. However, as discussed *supra*, it has not been established that any such small town character is actually encouraged by this ordinance. Islamorada does not have a demonstrably unique small village character to preserve. It is a town with no historic district, bisected by a busy thoroughfare fronted by numerous chain stores. (Evid. Stip. at 6-7).

Similarly, developing a "unique island character" for Islamorada could be a local benefit. Over time, the existing chain stores could be removed and replaced with unique stores. However, as discussed above, the ordinance does not take the appropriate steps to create such a small town environment. The ordinance permits non-formula stores and restaurants to be as large or artificial as their proprietors wish, without regard to their effect on a unique small town atmosphere. The ordinance does not remove existing chain stores, whose proliferation interferes with the ordinance's stated goals, nor does it make any apparent attempt to gradually develop an Island community. The ordinance allows

23

new, non-conforming chain stores, such as the CVS, to be established, which clearly interfere with any attempt to develop a small town character. (Evid. Stip. at 4-5).

The Court finds that the purpose of this ordinance and its practical application is economic protectionism. This kind of local protectionism is "the very sort of protection against out of state competition that the Commerce Clause was designed to prohibit." *Hunt*, 432 at 351-52. Section 1.6.4.4 and Section 1.6.4.1(e) of the Village of Islamorada's ordinance therefore violate the Dormant Commerce Clause and are unconstitutional.

Because § 2 of the Ordinance contains a severability clause,[21] the rest of the Village Ordinance shall remain in effect.

Having determined the sections of the Ordinance regarding formula retail establishments are unconstitutional under the Dormant Commerce Clause, the Court does not reach Plaintiffs' other challenges to the ordinance.

## IV. CONCLUSION

Based on the foregoing analysis, this court concludes that the subject Ordinance violates the provisions of the Interstate Commerce Clause. Plaintiffs have sustained damages as a result of these violations. Plaintiffs have been damaged by loss of use (*i.e.*,

---

[21] The Severability clause states: "if any section, sentence, clause o[r] phrase of this Ordinance shall for any reason be held to be invalid or unconstitutional, such decision shall not affect the validity of the remaining sections, sentences, clauses and phrases of this Ordinance but they shall remain in effect, it being the legislative intent that this Ordinance shall stand notwithstanding the invalidity of any part." Ordinance 02-02, § 2.

interest earned) of the $2,650,000 proceeds that would have been otherwise payable to them under the Whiteco contract. The damages that they have sustained to date are mathematically calculable, based on interest at the legal rate on the sum of $2,650,000 from April 22, 2004[22] through the date of this Judgment.[23]

Accordingly, it is hereby ORDERED and ADJUDGED that Plaintiffs shall recover from Defendant, VILLAGE OF ISLAMORADA, the sum of $599,408, together with the costs of this action and reasonable attorneys fees pursuant to 42 *U.S.C.* § 1988 in an amount to be determined upon hearing. It is further ORDERED and ADJUDGED that the provisions of Defendant's Ordinance 02-02 purporting to regulate "formula retail establishments", §§ 1.6.4.4 and 1.6.4.1(e), as codified in Village of Islamorada *Code* Chapter 30, are hereby declared invalid, and Defendant, VILLAGE OF ISLAMORADA is permanently enjoined from enforcing those invalid provisions.

DONE AND ORDERED in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse this 28th day of February, 2007.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

---

[22] The date that the Village applied the Ordinance, with finality, to Plaintiffs' property by denying Whiteco's appeal.

[23] The legal rate of interest annually established by the State of Florida for calendar years 2004 and 2005 was set at 7% per annum, for 2006, at 9% per annum and for 2007, at 11% per annum.

cc:     ***Counsel for Plaintiffs:***
        Derek Verne Howard, Esq.
        MORGAN & HENDRICK
        317 Whitehead Street
        P.O. Box 1117
        Key West, FL 33041
        Facsimile (305) 296-4331

        John A. Jabro, Esq.
        90311 Overseas Highway
        Suite B
        Tavernier, FL 33070
        Facsimile: (305) 852-0686

        ***Counsel for Defendants:***
        Harriet R. Lewis, Esq.
        Lewis Stroud & Deutsch, P.L.
        1900 Glades Road, #251
        Boca Raton, FL 33431
        Facsimile: (561) 826-2828

        Leigh Buckalew, Esq.
        Weiss Serota Helfman Pastoriza et al.
        200 E Broward Boulevard, Suite 1900
        Fort Lauderdale, FL 33301
        Facsimile: (954) 764-7770

26